## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PRINCE YOUNG,** | **Civil Action No.  21-3733 (FLW)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM & ORDER** |
| **MONMOUTH COUNTY** | |
| **CORRECTIONAL FACILITY,** | |
| **Defendant.** | |

*Pro se* Plaintiff, Prince Young ("Plaintiff"), a pretrial detainee presently incarcerated at Monmouth County Correctional Facility ("MCCI") in Freehold, New Jersey, has filed a *pro se* Complaint alleging violations of his civil rights under 42 U.S.C. § 1983.  *See* ECF No. 1. Plaintiff has paid the filing fee.  Federal law requires this Court, to "review before docketing. . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  *See* 28 U.S.C. § 1915A.  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915A(a) because Plaintiff is a "prisoner" and "seeks redress from a governmental entity," *i.e.*, MCCI.

Plaintiff's Complaint asserts that when he arrived at MCCI, he was assigned to the Gang Unit.  Corrections Officer Carmack told him that he would be kept separate from certain inmates and that this information would be logged in a computer.  On July 15, 2019, Plaintiff was watching TV in his unit when an inmate who was supposed to be kept separate from Plaintiff entered Plaintiff's Unit through side door that had a broken lock.  This inmate assaulted Plaintiff,

resulting in Plaintiff' having a concussion, a broken tooth, and mental injuries.  *See* Complaint at 5-6.

The Court construes Plaintiff to assert Fourteenth Amendment failure to protect claims pursuant to 42 U.S.C. § 1983.[1]  The Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  This duty includes taking reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997) (quoting *Farmer*, 511 U.S. at 833 (internal citations omitted); *see also A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Del Ctr.*, 372 F.3d 572, 587 (3d Cir. 2004) (applying the same failure-to-protect standard to Fourteenth Amendment claims); *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("This Court has applied the same standard to a failure-to-protect claim under the Fourteenth Amendment as under the Eighth Amendment.").

To recover under § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Although a municipality may be liable under § 1983, a county jail is not a proper defendant under § 1983.  *See Barrett v. Essex Cty. Corr. Facility*, No. CIV.A. 15–595 SDW, 2015 WL 1808523, at *3 (D.N.J. Apr. 16, 2015) ("A county jail, such as the Essex County facility, is not a person subject to suit under § 1983."); *Ingram v. Atl. Cty. Justice Fac.,* Civ. No. 10–1375, 2011 WL 65915, *3 (D.N.J. Jan. 7, 2011) (citations omitted) (county jail is not a

---

[1] The Court does not construe Plaintiff to assert any state law claims for relief.

person under section 1983). The Court, therefore, dismisses with prejudice the § 1983 claims against MCCI because it is not a "person" under § 1983.

Even if the Court were to construe Plaintiff to assert claims against the County of Monmouth, *see, e.g.*, *Mazariegos v. Monmouth County Correctional Inst.*, No. 12–5626, 2014 WL 1266659, at *6 (D.N.J. Mar. 25, 2014) ("While Plaintiff names MCCI as Defendant, this Court construes the proper defendant to be Monmouth County…."), he fails to state a claim for relief. Municipal liability under § 1983 may not be asserted under a *respondeat superior* theory of liability but must instead be founded on allegations that the government itself supported a violation of constitutional rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipal liability exists where execution of the municipality's policy or custom, whether made by lawmakers or decisionmakers whose edicts may fairly represent official policy, inflict the injury. *Id.* at 694.

Under Third Circuit law, when a plaintiff brings a complaint under *Monell* against a municipality, the specific offending custom, policy, or practice must be pleaded in the complaint. *See McTernan v. City of York*, 564 F.3d 636, 638 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (citing *Philips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)). In addition, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries, *see Estate of Roman v. City of Newark*, 914 F.3d 789, 798 ( 3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996), "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges. *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to

take precautions against future violations, and that this failure, at least in part, led to the injuries in question.  *See id.*

A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline.  To plead a claim based on failure to train (and/or supervise and/or discipline), a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'"  *Estate of Roman,* 914 F.3d at 798-800 (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)).  Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[2] *Id.* at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)).

Here, Plaintiff fails to state a claim against the County of Monmouth because there are no allegations that a specific practice, policy, or custom of the County caused Plaintiff's alleged injuries.  Nor are there any facts to suggest that Plaintiff's alleged injuries were caused by a failure to train and/or supervise.  As such, the Court declines to construe *Monell* claims against the County of Monmouth because they would be subject to dismissal without prejudice for failure to state a claim for relief.

---

[2] In some instances, "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations."  *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *City of Canton, Ohio*, 489 U.S. at 390 n. 10). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'"  *Id.* at 223-24 (quoting *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

It is possible that Plaintiff is attempting to hold individual prison officials responsible for his injuries.  In the caption of his Complaint, Plaintiff lists only MCCI, but in the body of his Complaint he mentions Officer Carmack, the corrections officer who allegedly told Plaintiff he would be "kept separate" from the inmate who assaulted him.  Plaintiff's allegations, however, do not state a claim for relief against Officer Carmack, as he would need to show that this Defendant and/or other prison officers were deliberately indifferent to an excessive risk of harm. *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1024 (3d Cir. 1991) (explaining that the state of mind requirement for prisoners' claims—"deliberate indifference"—applies also to pretrial detainees' claims).

"It is well established that merely negligent misconduct will not give rise to a claim under § 1983; the state defendant must act with a higher degree of intent." *Burton v. Kindle*, 401 F. App'x. 635, 637 (3d Cir. 2010) (*County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").  Thus, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety[,]" and relief is limited to situations where the prison official demonstrated "deliberate indifference" for the plaintiff's health and safety.  *Farmer*, 511 U.S. at 834.  "'Deliberate indifference' is a subjective standard whereby 'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'"  *Harvey v. Gloucester Cty. Jail*, Civ. No. 18-1797, 2018 WL 4735738, at *3 (D.N.J. Oct. 2, 2018) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).  It is not enough that an officer "should have known of the risk," the officer must have had actual knowledge.  *See Beers Capitol*, 256 F.3d at 133.  A plaintiff may, however,

demonstrate that "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Here, Officer Carmack told Plaintiff that he would be separated from certain gang members, but there are no facts to suggest that Officer Carmack knew the lock on the door was broken and failed to fix it or that he was otherwise aware that Plaintiff faced an excessive risk of harm but failed to take appropriate action.[3]  As such, the Court also declines to construe failure to protect claims against Defendant Carmack, as such claims would be dismissed without prejudice for failure to state claim for relief.

Having dismissed the Complaint with prejudice as to MCCI, the Court will administratively terminate this matter.  To the extent Plaintiff can cure the deficiencies in his Complaint by asserting a *Monell* claim against Monmouth County or a failure to protect claim against any individual prison officials, the Court will provide him with leave to submit an amended Complaint within 45 days of the date of this Order.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile).

Finally, on July 1, 2021, a new submission from Plaintiff was received by the Clerk of the Court, and the Clerk of the Court docketed this submission as an Amended Complaint in this action.  *See* ECF No. 5.  Upon review, however, this submission appears to be a new Complaint about law library access that is unrelated to Plaintiff's current failure to protect claims.  *See* ECF No. 5.  At this time, the Court will direct the Clerk of the Court to docket the Complaint at ECF No. 5 as a new civil action and strike it from this docket.

---

[3] Nor are there any facts to suggest that any other prison officials knew that Plaintiff faced an excessive risk of harm and failed to take appropriate action.

For the reasons explained in this Memorandum and Order, the Complaint is dismissed with prejudice as to MCCI.  Plaintiff may submit an Amended Complaint within 45 days to the extent he can cure the deficiencies in his Complaint as to the County of Monmouth and/or individual corrections officers.

**IT IS THEREFORE**, on this 25th day of August 2021,

**ORDERED** that the Clerk of the Court shall mark this matter as OPEN; and it is further

**ORDERED** that the Complaint (ECF No. 1) is dismissed WITH PREJUDICE as to Monmouth County Correctional Institute; and it is further

**ORDERED** that the Clerk of the Court shall ADMINISTRATIVELY TERMINATE this action; and it is further

**ORDERED** that within 45 days of the date of this Order, Plaintiff may submit an Amended Complaint if he is able to state a claim for relief against the County of Monmouth and/or or any individual corrections officers in connection with his failure to protect claim; and it is further

**ORDERED** that if Plaintiff does not submit an Amended Complaint within 45 days, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall docket the Complaint at ECF No. 5 as a new and separate civil action and send a copy of the docket information to Plaintiff at the address on file; and it is further

**ORDERED** that the Clerk of the Court shall strike ECF No. 5 from the docket in this action; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and CLOSE this matter accordingly.

Freda L. Wolfson
U.S. Chief District Judge